FARM CREDIT

**REGULAR AND CERTIFIED MAIL RETURN RECEIPT REQUESTED**

October 30, 2023

WALTER KIM DEPOY
8107 ALTON RD
ADRIAN, WV 26210
Certified Mail:70143490000165406268

RE: Loan # 18165102000

Dear Mr. Depoy:

This letter is to notify you that Farm Credit of the Virginias, ACA ("Association") has determined that your loan is distressed and we are informing you of your right to seek a restructure in accordance with the provisions of the Farm Credit Act of 1971 and applicable federal regulations found at 12 C.F.R. § 617.740 et seq. Based on the information presently available to us, the indicators used in this determination were:

- Installments due since July1, 2023 have not been paid in full.
- Inadaquate cash flow to service debt.
- Negative Financial Trend.

Restructuring alternatives may range from you performing fully on your loan obligations in conformance with the loan contract to a restructure of your loan by the Association if doing so will cure the distress.

Enclosed you will find an Application for Restructuring which should be completed in its entirety and returned to the Association no later than December 19, 2023 to P.O Box 431 Ripley,WV 25271.

The Application contains the AgFirst Farm Credit District restructuring policy for your review. In order for us to evaluate your Application, we will need the following:

- Completed financial statements
- Completed cash flow statements
- Tax returns for the past two years
- Verification of off-farm employment (if applicable)

EXHIBIT
tabbies
C

The decision to restructure a loan is based on an individual analysis of the facts and circumstances.

We are available to meet with you to review the status of your loan, discuss the suitability of your loan for restructuring, or to answer any questions concerning this notice or completion of your Application. We can be reached at 14428 Seneca Trail N. Lewisburg, WV 24901, or call 304-580-1883 or 304-6451575.

If we are unable to resolve the distress to your loan, the alternative may be liquidation or foreclosure. If your loan is restructured and you subsequently fail to perform under the terms of such restructure agreement (as described in 12 CFR §617.7410(e)), **we may initiate foreclosure proceedings against you without further notice.**

Sincerely,

David L. Wise
Special Assets Officer, NMLS # 571348

# APPLICATION FOR RESTRUCTURING

**Date of Application:** ______________________________

**Loan Number(s):** ______________________________

______________________________

**LOAN NAME:** ______________________________

______________________________

**Phone Number:** ______________________________

**CURRENT MAILING ADDRESS (To be completed by borrower):**

______________________________

______________________________

**Co-Signers; Endorsers; Guarantors:**

______________________ ______________________

______________________ ______________________

______________________ ______________________

**PRELIMINARY RESTRUCTURING PLAN: (To be completed by borrower)**

Restructuring can include, but is not limited to, the following actions or combination of actions by the lender: rescheduling of debt maturities, reamortization, renewal, deferral of principal or interest, extensions, releases with appropriate principal reduction, compromise of debt, interest rate changes, deed in lieu of foreclosure or set-aside notes.

Describe in detail your plan for restructuring this loan: (attach supplements if necessary)

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

______________________________

**I (we) hereby make written application for restructuring. I (we) acknowledge notification of the Distressed Loan Restructuring Policy as required by the Agricultural Credit Act of 1987.**

**Date:** ______________ ______________________________
Signature

***A copy of the Distressed Loan Restructuring Policy is attached for your information.***

# DISTRESSED LOAN RESTRUCTURING POLICY

## PURPOSE AND OBJECTIVES

The purpose of this policy is to outline the criteria and parameters to be used in loan restructuring.

All Associations and OFIs ("Lender") in the District have an obligation to borrowers, stockholders and investors in system debt obligations to collect all debts owed to the Lender, and all borrowers are expected to comply with contractual loan terms and conditions. In those instances where a district Lender determines that a borrower's loan is a distressed loan, the Lender shall consider restructuring in accordance with this policy and FCA regulations.

The objective of this policy is to clearly disclose the responsibilities of the borrower and Lender in determining if a loan should be restructured and the procedures and criteria to be used in that determination.

## OPERATING PARAMETERS

When the Lender determines that a loan subject to borrower rights is distressed, the Lender must provide one of the following written notices to the borrower stating that the loan may be suitable for restructuring:

1. A notice stating that the loan has been identified as distressed and that the borrower has the right to request a restructuring of the loan (non-foreclosure notice).
2. A notice that the loan has been identified as distressed, that the borrower has the right to request a restructuring of the loan, and that the alternative to restructuring may be foreclosure (45-day notice). The Lender must provide this notice to the borrower no later than 45 days before the Lender begins foreclosure proceedings with respect to any loan outstanding to the borrower. This notice must specifically state that if the loan is restructured and the borrower does not perform under the restructure agreement (as described in FCA regulation), the Lender may initiate foreclosure proceedings without further notice.

The Lender shall include with the notice:

1. A copy of this restructuring policy; and
2. All materials necessary to enable the borrower to submit an application for restructuring the loan.

For any borrower in bankruptcy, the Lender should send a notice that identifies the loan as distressed and the statutory right to file an application for a restructuring. The notice must also restate the language from the automatic stay provision to emphasize that the notice is not intended as an attempt to collect, assess or recover a claim.

The Lender is required to notify all primary obligors on a loan. If the obligors previously identified one party to receive notices, the Lender should send the original notice to that person and send copies to the other obligors. For borrowers in a bankruptcy proceeding, the Lender should send the notice to the borrower and, if retained, the borrower's counsel.

The Lender must notify a borrower of the right to file another application to restructure the loan if the Lender sent the non-foreclosure notice to the borrower and the borrower has performed on the previous restructure agreement. Performance means that a borrower has made six consecutive monthly payments, four consecutive quarterly payments, three consecutive semiannual payments, or two consecutive annual payments. However, the Lender is not required to send another notice if he or she previously sent a 45-day notice and a borrower did not perform under a restructure agreement, as described above.

### Application Procedures For Borrower

Any borrower who has been notified that a loan may be suitable for restructuring may submit an application for restructuring. The application shall be submitted to the appropriate Lender according to the requirements specified in this policy. To be considered, an application must be received by the Lender within the time period set by the Lender in the notice.

If an application is not received by the Lender within the specified time period, the Lender may begin foreclosure proceedings. The Lender shall be under no obligation to consider an application after foreclosure proceedings have begun.

The Lender must provide any borrower to whom a notice has been sent with a reasonable opportunity to meet personally with a representative of the Lender. The borrower and Lender may meet to review the status of the loan, the financial condition of the borrower, and the suitability of the loan for restructuring. A meeting to discuss a loan

that is in a non-interest-earning status may also involve developing a plan for restructuring, if the Lender determines the loan is suitable for restructuring.

In the absence of an application for restructuring from a borrower, the Lender is encouraged to develop and propose a restructuring plan for a distressed loan, but it is under no obligation to do so.

**Restructuring Criteria**

The Lender is not required to consider a distressed loan for restructuring unless the borrower submits an application for restructuring. After verifying that the borrower's application for restructuring has been returned within the time frame specified in this policy, the Lender shall act expeditiously to process the application.

In determining whether or not to restructure a loan, the Lender shall compare the potential cost of restructuring and the potential cost of foreclosure as those terms are defined in this policy. The term *cost* as used here includes all factors relevant to making a sound credit decision.

If the Lender determines that a preliminary restructuring plan submitted by a borrower will entail a cost less than or equal to the potential cost of foreclosure, the Lender shall use the borrower's plan as the basis for a restructure.

In considering a plan for restructuring, the Lender should consider the following criteria:

1. Whether the cost to the Lender of restructuring the loan is equal to or less than the cost of foreclosure, considering all relevant criteria that include the following:

    a. The present value of interest and principal forgone by the Lender in carrying out the application for restructuring;
    b. Reasonable and necessary administrative expenses involved in working with the borrower to finalize and implement the application for restructuring plan, including attorney's fees, costs, and other expenses advanced by the Lender pursuant to the loan documents;
    c. Whether the borrower's application for restructuring included a preliminary restructuring plan and cash flow analysis, taking into account income from all sources to be applied to the debt and all assets to be pledged, that show a reasonable probability that orderly debt retirement will occur as a result of the proposed restructuring; and
    d. Whether the borrower has furnished or is willing to furnish complete and current financial statements in a form acceptable to the Lender.
    e. Whether the borrower is applying all income over and above necessary and reasonable living and operating expenses to the payment of primary obligations;
    f. Whether the borrower has the financial capacity and the management skills to protect the collateral from diversion, dissipation, or deterioration;
    g. Whether the borrower is capable of working out existing financial difficulties, taking into consideration any prior restructuring of the loan, reestablishing a viable operation, and repaying the loan on a rescheduled basis; and
    h. In the case of a distressed loan that is not delinquent, whether restructuring consistent with sound lending practices may be taken to reasonably ensure that the loan will not have to be placed into non-interest-earning status in the future.

If the borrower and Lender are not able to agree on supportable or realistic financial projections, the Lender may use benchmarks to determine the operational input costs and chattel security values. These benchmarks may include, but are not limited to, the borrower's five-year production average; averages in the county where the farming operation is located, based on data from United States Department of Agriculture, local colleges or universities, or other recognized authority; and other such reasonable sources.

**Lender's Decision on Restructuring**

If the Lender determines the potential cost to the Lender of restructuring the loan as proposed in the application for restructuring is less than or equal to the potential cost of foreclosure, the Lender must restructure the loan. If two or more restructuring alternatives are available, the Lender must restructure the loan using the alternative that results in the least cost to the Lender.

**Notice of Lender's Decision**

The Lender must provide a written decision on an application for restructuring and provide this decision to the borrower within 15 days from the conclusion of the negotiations used to develop the application for restructuring in any manner that requires a primary obligor to acknowledge receipt of the Lender's decision. In the case of a loan

involving one or more primary obligors, the original notice may be provided to the primary obligor identified to receive such notice, with copies provided by regular mail to the other obligors.

When an application for restructuring is denied, the notice must include:

1. The specific reason(s) for the denial and any critical assumptions and relevant information on which the specific reasons are based, except that any confidential information shall not be disclosed;
2. A statement that the borrower may request a review of the denial;
3. A statement that any request for review must be made in writing within seven days after receiving such notice; and
4. A brief explanation of the process for seeking review of the denial, including the appraisal review process and the right to appear before the credit review committee, accompanied by counsel or any other representative, if the borrower chooses.

**Review of Denied Application**

A borrower who has received notice of a decision to deny an application for restructuring a distressed loan may seek a reversal of the decision by requesting a review of the denied application by a credit review committee appointed by the Lender. Any request for review shall be made in writing and shall be received by the Lender within seven days after the borrower acknowledges receipt for the denial of restructuring notice.

A request for review filed with the credit review committee under this policy may include at the same time a request for an independent appraisal by an accredited appraiser. If such a request is made, the credit review committee shall provide a list of three appraisers approved by the Lender within 30 days of the request for an independent collateral evaluation. The applicant or borrower must enter into a contractual arrangement for evaluation services within 30 days of receiving the names of three approved independent evaluators and shall notify the Lender of the appraiser selected.

The contractual arrangement must be a written contract for services that complies with the Lender's appraisal standards. The evaluation must be completed within a reasonable period of time, taking into consideration any extenuating circumstance. The cost of the appraisal shall be borne by the borrower. Prior to the credit review committee meeting, a copy of the appraisal shall be provided: 1) to the borrower; and 2) to the credit review committee, for consideration in its final determination with respect to the application for restructuring.

The borrower shall be notified in writing of the time and place of the credit review committee meeting at least 15 days prior to such meeting. The borrower may appear in person before the credit review committee and may be accompanied by counsel or by any other representative(s) of the borrower's choice to seek a reversal of the decision on the application under review. The borrower may submit any relevant documents or other information to support the restructuring application which has been denied.

Review by the credit review committee will be limited to the application for restructuring originally submitted by the applicant, and results of the independent appraisal provided for by this policy, except the credit review committee is not required to consider a collateral evaluation that does not conform to the applicable collateral evaluation standards.

Not later than 30 days after the meeting, the credit review committee shall reach a decision on the application for restructuring at its sole discretion, and its decision shall be the final decision of the Lender with respect to restructuring the loan. The credit review committee shall promptly notify the borrower in writing of the committee's decision and the reasons for it.

**Credit Review Committee Composition**

The board of directors of each Lender must establish one or more credit review committees to review adverse credit decisions made by the Lender. The credit review committee may only review adverse decisions at the request of the applicant or borrower. A credit review committee must consist of at least one farmer-elected board member. Anyone involved in the adverse decision being considered may not serve on the credit review committee. The decision of the committee is final.

If any loan or loan restructuring required the prior approval of the Bank, either the Bank or the originating direct lending Association may be tasked with setting up the credit review committee, so long as both entities have representation on the same. In such cases, the farmer-elected board member must come from the originating direct lending Association.

**Effect of Restructuring on Borrower Stock**

If the Lender forgives and writes off any of the principal outstanding on the loan made to any borrower in connection with restructuring of a loan pursuant to this policy, the system institution of which the borrower is a member and stockholder shall cancel the same dollar amount of class B stock or class B participation certificates held by the borrower in respect to the loan at the time of the restructuring, up to the total amount of such class B stock or class B participation certificates. The borrower's membership and/or voting privileges in the association shall be maintained by the continued ownership of class C stock or class C participation certificates.

**Preventive Actions**

Nothing contained in this policy shall be construed to prevent any Lender from enforcing any contractual provisions that allow the Lender to foreclose a loan, or from taking such other lawful actions as the Lender deems appropriate, if the Lender has reasonable grounds to believe that the loan collateral will be destroyed, dissipated, consumed, spent, concealed or permanently removed from the state in which the collateral is located.

**IMPORTANT TERMS AND DEFINITIONS**

For the purposes of this policy, the following terms and definitions apply:

- **Application for Restructuring** means a written request from a borrower to restructure a distressed loan:

  1. Submitted on the appropriate forms prescribed by the Lender; and
  2. Accompanied by sufficient financial information and repayment projections, where applicable, as required by the Lender to support a sound credit decision.

- **Cost of Foreclosure** - The term "cost of foreclosure" includes:

  1. The difference between the outstanding balance due, as provided by the loan documents, and the liquidation value of the loan, taking into consideration the borrower's repayment capacity and the liquidation value of the collateral used to secure the loan;
  2. The estimated cost of maintaining the loan as a high-risk asset;
  3. The estimated cost of administrative and legal action necessary to foreclose a loan and dispose of property acquired as the result of the foreclosure, including attorney's fees and court costs;
  4. The estimated cost of value changes in collateral used to secure a loan during the period beginning on the date of the initiation of an action to foreclose or liquidate the loan and ending on the date of the disposition of the collateral; and
  5. All other costs incurred as the result of the foreclosure or liquidation of a loan.

- **Distressed Loan** - The term "distressed loan" means a loan that the borrower does not have the financial capacity to pay according to its terms, as determined by the Lender; and that exhibits one or more of the following characteristics:

  1. The borrower is demonstrating adverse financial and repayment trends.
  2. The loan is delinquent or past due under the terms of the loan contract.
  3. One or both of the factors listed in numbers 1 and 2, together with inadequate collateralization; present a high probability of loss to the Lender.

- **Foreclosure Proceeding** - The term "foreclosure proceeding" means:

  1. A foreclosure or similar legal proceeding to enforce a lien on property, whether real or personal, that secures a non-interest earning asset or distressed loan; or
  2. The seizing of and realizing on non-real property collateral, other than collateral subject to a statutory lien arising under titles I and II of the Act, to effect collection of a nonaccrual or distressed loan.

- **Loan** – The term "loan" means an extension of credit made to a farmer, rancher, or producer or harvester of aquatic products, for an agricultural or aquatic purpose and other credit needs of the borrower, including financing for processing or marketing directly related to the borrower's operations and those of other eligible farmers, ranchers, producers or harvesters of aquatic products.

- **Lender** - The term "Lender" used here means "qualified Lender." "Qualified Lender" means:

  1. A System institution, except a bank for cooperatives, that makes loans as defined in this section; and

2. Each bank, institution, corporation, company, credit union, and association described in Section 1.7(b)(1)(B) of the Act (commonly referred to as an other financing institution), but only with respect to loans discounted or pledged under Section 1.7(b)(1).

- **Restructure and Restructuring** – The terms "restructure" and "restructuring" of a loan means a reamortization, renewal, deferral of principal or interest, monetary concessions, and the taking of any other action to modify the terms of, or forbear on, a loan.

**AUTHORITIES DELEGATED TO MANAGEMENT**

All authorities are delegated to the Executive Committee, or its designee(s), with full authority to implement the provisions of this policy.

**AUTHORITIES RETAINED FOR BOARD APPROVAL OR ACTION**

Amendments and modifications to this policy must be submitted to and approved by the Board.

**PROCESS FOR ADDRESSING EXCEPTIONS**

Any exception to this policy must be documented by the Executive Committee and reported to the Board.

## Financial Information

Name(s): ______________________ ______________________

| NON-FARM EMPLOYMENT STATUS | Borrower | Co-Borrower |
|---|---|---|
| Salary: | | |
| Employer's Name: | | |
| Employer's Address: | | |
| Type of Business/Position Occupied: | | |
| Number of Years in Present Employment: | | |
| Other Non-Farm Income (gross): | | |

BALANCE SHEET AS OF: __________ (Date)

(Complete supplemental schedules on back or attach independent schedules where appropriate)

| ASSETS | |
|---|---|
| Cash | |
| Savings | |
| Feed, Seed & Supplies (A) | |
| Invest. Growing Crops (B) | |
| Crops Held for Resale (C) | |
| Market Livestock (D) | |
| *Stocks & Bonds (E) | |
| Other Current Assets (F) | |
| CURRENT ASSETS $ | |
| Autos/Trucks | |
| Machinery & Equipment | |
| Breeding Livestock (G) | |
| | |
| | |
| | |
| Allotments, Base & Quotas | |
| Contracts or Notes Rec. | |
| Cash Value of Life Insurance | |
| Retirement, IRA & 401K | |
| Stock & Equity in Co-ops | |
| Other Intermediate Assets (H) | |
| Personal Property | |
| Interests in Other Entities (I) | |
| INTERMEDIATE ASSETS $ | |
| Unit/Parcel Identification | |
| Acres | |
| Acres | |
| Acres | |
| Residence | |
| | |
| Leasehold Improvements | |
| Contracts/Notes Rec.>10 yrs. | |
| Other Real Estate (J) | |
| FIXED ASSETS $ | |
| TOTAL ASSETS $ | |

*Exclude Stocks & Bonds held in retirement accounts from Current Assets. These should be listed as Intermediate Assets.

| LIABILITIES & NET WORTH<br>Creditor Name and/or Note # | Interest Rate | # of Pmts/yr | Payment Amount | Security | Loan Purpose | Present Balance |
|---|---|---|---|---|---|---|
| Income Tax | | | | | | |
| Other Taxes (Real Estate, etc.) | | | | | | |
| Accounts Payable | | | | | | |
| Credit Cards | | | | | | |
| | | | | | | |
| | | | | | | |
| Notes Payable ≤ 1 yr. | | | | | | |
| | | | | | | |
| Loans on Life Insurance | | | | | | |
| Total Other Current Debts | | | | | | |
| Current Portion of IT & LT Debts | | | | | | |
| Accrued Interest | | | | | | |
| CURRENT LIABILITIES $ | | | | | | |
| Notes Payable >1 yr. & ≤ 10 yrs. | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Total Other Intermediate Debts | | | | | | |
| Total Financial Leases | | | | | | |
| INTERMEDIATE LIABILITIES $ | | | | | | |
| Mortgages | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Total Other Long-Term Debts | | | | | | |
| LONG-TERM LIABILITIES $ | | | | | | |
| TOTAL LIABILITIES $ | | | | | | |
| NET WORTH $ | | | | | | |

### ADDITIONAL INFORMATION

| ("You" means the individual(s) or entity for which the above information applies.) | Yes | Amount(s) | No |
|---|---|---|---|
| Are there lawsuits pending against you? | | | |
| Have you endorsed/co-signed loans for others? | | | |
| Annual operating lease payments? | | | |
| Annual legal obligation for payments in support of children/spouse of previous marriage(s)? | | | |
| Other contingent liabilities? | | | |
| Have you ever declared bankruptcy or settled any debts for less than the amount owed? | If yes, provide details. | | |

| Insurance Coverage | Agent / Company | Yes | Amount(s) | No |
|---|---|---|---|---|
| Term Life | | | | |
| Whole Life | | | | |
| Other (Specify) | | | | |
| Home Owners | | | | |
| Health | | | | |
| Crop | | | | |

### CERTIFICATION

By signing below, I acknowledge that the information set forth on the Financial Information statement and on the Supplementary Balance Sheet Schedules are provided for the purpose of obtaining or maintaining credit and/or guaranteeing the obligation of a third party. I represent and certify that all information is true and correct, containing no material misrepresentations or omissions. I understand that a false statement, knowingly made, with the intent to defraud the Lender is a penal offense under the Farm Credit Act. The Farm Credit Institution is authorized to contact credit reporting agencies and other sources it deems necessary to verify the accuracy of statements made herein to determine my creditworthiness. I agree that information obtained along with the Financial Information statement and on the Supplementary Balance Sheet Schedules shall remain the property of the Farm Credit Institution, whether or not credit is given.

______ Date ______________________ Signature

______ Date ______________________ Signature

______ Date ______________________ Signature

______ Date ______________________ Signature

## SUPPLEMENTARY BALANCE SHEET SCHEDULES AS OF ______________

Date

For: ______________________________ ______________________________

These schedules are to provide additional, detailed financial information necessary to assure the lender has a realistic understanding of your business and financial position. All subtotals must be transferred to the Balance Sheet. Transfer subtotals to the same section marked with a capitalized letter.

**Feed, Seed & Supplies (A)**

| Item | Quantity | $/Unit | Value |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal $ | |

**Investment in Growing Crops (B)**

| # of Acres | Crop | Cost/Acre | Value |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal $ | |

**Crops Held for Resale (C)**

| Units | Commodity | $/Unit | Total |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal $ | |

**Market Livestock (D)**

| No. | Kind | Avg. Weight | $/Unit | Total |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Subtotal $ | |

**Stocks & Bonds (Excluding Retirement Accounts) (E)**

| No. of Shares (Units) | Company/ Fund Name | $/Share ($/Unit) | Value |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal $ | |

**Other Current Assets (F)**

| No. | Item | Addl. Info./ Description | $/Unit | Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Subtotal $ | |

**Breeding Livestock (G)**

| No. | Unit Description (ex. 1,200 lb. beef cows w/out calves) | $/Unit | Value |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal $ | |

**Other Intermediate Assets (H)**

| No. | Item | Addl. Info./ Description | $/Unit | Value |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Subtotal $ | |

**Interests in Other Entities (I)**

| Entity Name | Type, (ex. Partnership, Sub-S Corp., etc) | *Total Assets | *Total Liabilities | *Net Worth | *% Ownership | *Value |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | Subtotal $ | |

** Depending on the significance to your overall financial position and repayment ability, you may need to submit a complete Balance Sheet and Income Statement (including debt service) on this entity.*

**Other Real Estate (J)**

| Property Location (City/County/State) | Acres | Title in Name of | **Total Market Value | **Total Liens Against Property | **Net Equity | **% Ownership | **Value |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | Subtotal $ | |

***Depending on the significance to your overall financial position and repayment ability, you may need to submit a complete Balance Sheet and Income Statement (including debt service) on this entity/property.*